**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION**

| | |
|---|---|
| SUSAN FITZL and SAMANTHA HORTON, on behalf of themselves and a class of all others similarly situated, | Civil Action No.  2:22-cv-00544 |
| Plaintiffs, | **CLASS ACTION COMPLAINT and DEMAND FOR JURY TRIAL** |
| v. | |
| AMAZON.COM, INC., | |
| Defendant. | |

Plaintiffs Susan Fitzl and Samantha Horton (collectively, "Plaintiffs"), individually and on behalf of themselves and all others similarly situated, bring this class action lawsuit against Defendant Amazon.com, Inc. ("Amazon" or "Defendant") based upon personal knowledge as to themselves, the investigation of their counsel, and on information and belief as to all other matters.

## INTRODUCTION

1.      This is a class action lawsuit against Defendant regarding the manufacture, distribution, and sale of Amazon's Basic Care-branded "Non-Drowsy" over-the-counter cold and flu medicines that contain Dextromethorphan Hydrobromide ("the "Non-Drowsy Products").[1]

2.      The Non-Drowsy Products state prominently on the front of their labels that they are "Non-Drowsy" and "Daytime" products.

---

[1] The Non-Drowsy Products include: Basic Care Vapor Ice Daytime and Nighttime Severe Cold and Flu Combo Pack, Basic Care Tussin CF Severe, Basic Care Daytime Severe Cold and Flu, Basic Care Cold and Flu Relief Multi-Symptom Daytime/Nighttime Combo Pack Softgels, Basic Care Daytime Cold and Flu, Basic Care Daytime Severe. Plaintiffs reserve the right to amend this list if further investigation and/or discovery reveals that the list should be amended.



3.     By prominently labeling the products as "Non-Drowsy" and "Daytime," Defendant led Plaintiffs and other consumers to believe that the Non-Drowsy Products do not cause drowsiness, and that drowsiness is not a side effect of the products.

4.     Defendant also led Plaintiffs and other consumers to believe that the Non-Drowsy Products are for use during the "Daytime" and intended to be used during waking hours.

5.     However, one of the active ingredients in the Non-Drowsy Products is Dextromethorphan Hydrobromide ("DM HBr"). While the average consumer may not be aware, drowsiness is a documented side effect of DM HBr at dosages recommended by Defendant in respect to the Non-Drowsy Products. Authorities such as the National Library of Medicine and Mayo Clinic list drowsiness as a side effect of this ingredient.[2]

6.     Plaintiffs and Class members purchased the Non-Drowsy Products with the expectation that the products would not cause drowsiness and that they were intended to be used during waking hours. Because Defendant sold products to consumers that cause drowsiness, Plaintiffs and the Classes were deprived of the benefit of their bargain.

---

[2] Dextromethorphan: MedlinePlus Drug Information, National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682492.html (last accessed March 23, 2022); *Mayo Clinic, Drugs and Supplements Dextromethorphan (Oral Route)*, https://www.mayoclinic.org/drugs-supplements/dextromethorphan-oral-route/side-effects/drg-20068661?p=1 (last accessed March 23, 2022).

CLASS ACTION COMPLAINT and DEMAND FOR JURY TRIAL

7.     Accordingly, Plaintiffs bring this action on behalf of themselves and the Class for equitable relief and to recover damages and restitution for: (i) breach of express warranty; (ii) violations of the Wisconsin Deceptive Trade Practices Act ("WDTPA"), Wis. Stat. Ann. § 100.18, *et seq.*; (iii) violations of the Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01 *et seq.*; (iv) unjust enrichment; (v) negligent misrepresentation; and (vi) intentional misrepresentation.

**PARTIES**

8.     Plaintiff Susan Fitzl is a resident and citizen of the state of Wisconsin. Plaintiff Fitzl purchased a Basic Care Vapor Ice Daytime and Nighttime Severe Cold and Flu combo pack from Amazon.com on January 26, 2022.  When purchasing the Non-Drowsy Product, Plaintiff Fitzl reviewed the accompanying labels and disclosures, and understood them as representations and warranties by Defendant that the products would not cause drowsiness and could be used during the day.  Plaintiff Fitzl relied on these representations and warranties in deciding to purchase the Non-Drowsy Product and these representations and warranties were part of the basis of the bargain in that she would not have purchased the Non-Drowsy Product if she had known that they would cause drowsiness.  When Plaintiff Fitzl took the medication as directed by Defendant, Plaintiff Fitzl became unexpectedly drowsy.

9.     Plaintiff Samantha Horton is a resident and citizen of the state of Ohio. Plaintiff Horton purchased a Basic Care Daytime Severe and Nighttime Severe Cold and Flu combo pack from Amazon.com on September 13, 2021. When purchasing the Non-Drowsy Product, Plaintiff Horton reviewed the accompanying labels and disclosures, and understood them as representations and warranties by Defendant that the products would not cause drowsiness and could be used during the day.  Plaintiff Horton relied on these representations and warranties in deciding to purchase the Non-Drowsy Product and these representations and warranties were part of the basis of the bargain in that she would not have purchased the Non-Drowsy Product if she had known that they would cause drowsiness.  When Plaintiff Horton took the medication as directed by Defendant, Plaintiff Horton became unexpectedly drowsy.

10.    Amazon is a Delaware corporation with its principal place of business and headquarters located at 410 Terry Avenue North, Seattle, Washington. Amazon was founded in

1994 in Bellevue, Washington by Jeff Bezos and is one of the largest retailers in the world. At all relevant times hereto, Defendant was engaged in manufacturing, marketing, distributing, and advertising Non-Drowsy Products throughout the United States. Defendant created and/or authorized the false and misleading advertising and labeling of the Non-Drowsy Products.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from the Defendant.

12.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in Washington, regularly conducts business in this District, and has extensive contacts with this forum.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this District, and Defendant transacts substantial business in this District.

## FACTUAL ALLEGATIONS

**A.      Defendant Manufactures, Distributes, Markets, and Sells the Non-Drowsy Products**

14.     Defendant manufactures, distributes, markets, and sells the Non-Drowsy Products.

15.     Each of the Non-Drowsy Products prominently state on its label that the product is "Non-Drowsy" and some also include the representation that product is intended for "Daytime" use.

16.     For example, below is an image of the Basic Care Tussin CF Severe's product label.

CLASS ACTION COMPLAINT and DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10



11       17.    The Basic Care Daytime Cold & Flu product label includes the same representations,
12   with the addition of the Daytime representation on its label.

13
14
15
16
17
18
19
20
21
22
23



24       18.    The Non-Drowsy Products are also sold in combo packs with NightTime products.
25   For example, below is an image of the Amazon Daytime Severe Cold & Flu combo pack which
26   includes "Daytime" and "Nighttime" formulations.

27
28

CLASS ACTION COMPLAINT and DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10



11      19.     The Nighttime product includes the representation that the product is for "Nighttime

12  Relief" whereas the Daytime product includes "Non-Drowsy" and "Daytime Relief"

13  representations.

14      20.     Both the Daytime and Nighttime products contain DM HBr, the ingredient in the

15  Non-Drowsy Products that causes drowsiness.

16      21.     The "Non-Drowsy" and "Daytime" representations are materially the same across

17  the Non-Drowsy Products.

18      22.     Based on the prominent "Non-Drowsy" and "Daytime" representations included on

19  the front of each product, a reasonable consumer would believe that the products do not cause

20  drowsiness and that drowsiness is not a side effect of the product.

21  **B.      Defendant's False and Misleading Advertising Campaign**

22      23.     One of the active ingredients in the Non-Drowsy Products is DM HBr.

23      24.     Drowsiness is a well-documented side effect of DM HBr.

24      25.     For example, the Mayo Clinic and the National Library of Medicine list drowsiness

25  as a side-effect of the ingredient.[3]

26  _____

27  [3] *Dextromethorphan: MedlinePlus Drug Information, National Library of Medicine*,
    https://medlineplus.gov/druginfo/meds/a682492.html (last accessed March 23, 2022); *Mayo Clinic, Drugs and*

28  *Supplements Dextromethorphan (Oral Route)*, https://www.mayoclinic.org/drugs-supplements/dextromethorphan-oral-route/side-effects/drg-

- 6 -

CLASS ACTION COMPLAINT and DEMAND FOR JURY TRIAL

26.     Manufacturers and distributors know that DM HBr causes drowsiness as their safety data sheets ("SDS") explicitly state that DM HBr causes and may cause drowsiness.

27.     According to Pfizer's safety datasheet for their Robitussin cough medicine. "Common adverse reactions associated with the clinical use of dextromethorphan hydrobromide include, drowsiness, dizziness, and nausea and vomiting."[4]

28.     Santa Cruz Biotechnology Inc lists acute health effects on their SDS following the consumption of DM HBr such as "Drowsiness, dizziness, excitation, mental confusion and gastro-intestinal disturbances have been described following dextromethorphan. Administration."[5]

29.     In other words, sedation is a well-known adverse event of this ingredient.[6]

30.     In fact, the Federal Aviation Administration prohibits pilots from flying after taking medicines that contain dextromethorphan. The document titled, "What Over-the-Counter (OTC) medications can I take and still be safe to fly" lists DayQuil as a "No Go" product because it contains dextromethorphan.[7]   The Non-Drowsy Products and DayQuil both contain this ingredient. Specifically, the Non-Drowsy Products are compared to DayQuil on the front panel of the product labels.

---

20068661?p=1 (last accessed March 23, 2022).
10 Dextromethorphan: MedlinePlus Drug Information, National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682492.html (last accessed March 23, 2022).

[4] *Pfizer, Safety Data Sheet*, https://imgcdn.mckesson.com/CumulusWeb/Click_and_learn/SDS_9PFIZ_ROBITUSSIN_DM_SYRP_ADLT_COUGH_CHEST_HONEY_4OZ.pdf (last accessed March 23, 2022).

[5] Dextromethorphan Hydrobromide, Material Safety Data Sheet, https://datasheets.scbt.com/sc-204716.pdf (last accessed March 23, 2022).

[6] *See* Martin, E., Narjoz, C., Decleves, X., Labat, L., Lambert, C., Loriot, M. A., ... & Pickering, G. (2019). Dextromethorphan analgesia in a human experimental model of hyperalgesia. *Anesthesiology*, *131*(2), 356-368; *see also* Siu, A. and Drachtman, R. (2007), Dextromethorphan: A Review of N-methyl-d-aspartate Receptor Antagonist in the Management of Pain. CNS Drug Reviews, 13: 96-106. https://doi.org/10.1111/j.1527-3458.2007.00006.x ("DM is used clinically in the form of salt, dextromethorphan hydrobromide...The majority of DM's adverse effects occur at the level of the CNS. Neurologic toxicity associated with DM includes dystonia, fatigue, drowsiness, and dizziness".).

[7] *Federal Aviation Administration, What Over-the-Counter (OTC) medications can I take and still be safe to fly* https://www.faa.gov/licenses_certificates/medical_certification/media/OTCMedicationsforPilots.pdf (last accessed March 23, 2022).

1
2
3
4
5
6
7
8
9
10



11    31.    The Non-Drowsy Products do not disclose anywhere on the packaging that they do
12 or can cause drowsiness, or that drowsiness is a side effect.

13    32.    As such, Defendant's advertising campaign is false and misleading.

14    33.    The Food and Drug Administration ("FDA") prohibits labeling drugs with "false or
15 misleading" statements. 21 C.F.R. § 201.6. It is misleading to label a product "Non-Drowsy" when
16 it does cause drowsiness, or if drowsiness is a known side effect of one of its active ingredients.

17    34.    While the Federal Regulations relating to the labelling of antitussive drug products
18 do not require products with DM HBr to include an affirmative "drowsiness" warning, *see*
19 *generally*, 21 C.F.R. § 341.74, Defendant could have simply omitted the false and misleading "Non-
20 Drowsy" representations from its product labels.

21    35.    Other drug makers do not falsely claim that products that include DM HBr are "non-
22 drowsy."  For example, Coricidin is a cold symptom relief product for people with high blood
23 pressure.  Coricidin is manufactured, sold, and advertised by Bayer. This product contains DM HBr
24 and omits false representations by not labeling the product as "Non-Drowsy."

25
26
27
28

CLASS ACTION COMPLAINT and DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13



14     36.     Or, if Defendant wanted to differentiate its Daytime products from its Nighttime

15 products, it could have indicated on the product label that the Daytime products would cause *less*

16 drowsiness than the Nighttime products.  For example, the below Dramamine product is advertised

17 as a "less drowsy" formula.

18
19
20
21
22
23
24
25
26
27
28



CLASS ACTION COMPLAINT and DEMAND FOR JURY TRIAL

37.     Defendant intended that consumers would rely on the "Non-Drowsy" and "Daytime" labeling so that consumers would purchase more products, pay a price premium, and buy them as alternatives to its Nighttime products. The product labels do not warn consumers that the products cause drowsiness, may cause drowsiness, or you may get drowsy from the usage of such products thereby creating an unreasonable risk of harm.

**C.    Consumers Have Been Harmed By Defendant's False Representations**

38.     Defendant knew, or should have known, that Defendant's "Non-Drowsy Products" are misbranded because they contain DM HBr which causes drowsiness in consumers.

39.     Defendant knew, or should have known that products misrepresented material facts concerning the "Non-Drowsy" and "Daytime" representations when in fact the products contained an ingredient that causes drowsiness.

40.     Defendant knew, or should have known the representations and statements through it's labeling prescribes dangerous uses.

41.     Plaintiffs would not have purchased the Non-Drowsy Products, or would have paid less for them, had the Non-Drowsy Products been truthfully and accurately labeled.

**CLASS ACTION ALLEGATIONS**

42.     Plaintiffs bring this action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of the following Classes:

> All persons who purchased one or more of Defendant's Non-Drowsy Products in the United States for personal/household use within any applicable limitations period (the "Nationwide Class").

43.     Plaintiff Fitzl brings this action individually and on behalf of the following Wisconsin subclass:

> All persons who purchased one or more of Defendant's Non-Drowsy Products in the state of Wisconsin for personal/household use within any applicable limitations (the "Wisconsin Subclass").

44.     Plaintiff Horton brings this action individually and on behalf of the following Ohio subclass:

> All persons who purchased one or more of Defendant's Non-Drowsy Products in the state of Ohio for personal/household use within any applicable limitations (the "Ohio Subclass").

45.     Excluded from the Class and Subclass are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entities in which Defendant or its parents and any entities in which Defendant has a controlling interest and its current or former employees, officers, and directors; and (3) individuals who allege personal bodily injury resulting from the use of Affected Products.

46.     Numerosity (Rule 23(a)(1)): The exact number of members of the Class is unknown and currently unavailable to Plaintiffs, but joinder of individual members herein is impractical. The Class is likely comprised of thousands of consumers. The precise number of Class members, and their addresses, is unknown to Plaintiffs at this time, but can be ascertained from Defendant's records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, Internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

47.     Predominant Common Questions (Rule 23(a)(2) and (b)(3)): The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. The common and legal questions include, but are not limited to, the following:

a.  Whether the Non-Drowsy Products cause drowsiness;

b.  Whether Defendant's labelling of the Non-Drowsy Products as "Non-Drowsy" and "Daytime" is false, misleading, and/or deceptive;

c.  Whether Defendant violated the state consumer protection statutes alleged herein;

d.  Whether Defendant breached its express warranties;

e.  Whether Defendant was unjustly enriched; and

f.  The nature of relief, including damages and equitable relief, to which Plaintiffs and members of the Class are entitled.

48.     Typicality of Claims (Rule 23(a)(3)): Plaintiffs' claims are typical of the claims of

the Class because Plaintiffs, like all other Class Members, purchased the Non-Drowsy Products, suffered damages as a result of that purchase, and seek the same relief as the proposed Class Members.

49.     Adequacy of Representation (Rule 23(a)(4)): Plaintiffs adequately represent the Class because their interests do not conflict with the interests of the members of the Class, and they have retained counsel competent and experienced in complex class action and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interest of the members of the Class.

50.     Superiority (Rule 23(b)(3)): A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendant because the damages suffered by Plaintiffs and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

51.     Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)): In the alternative, this action may properly be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for the Defendant; or the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

**CAUSES OF ACTION**

**COUNT I**

**BREACH OF EXPRESS WARRANTY**
**(on behalf of Plaintiffs and the Nationwide Class (or alternatively, the Wisconsin and Ohio**

Subclasses))

52.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

53.     Defendant marketed and sold its Non-Drowsy Products in the stream of commerce with the intent that its Non-Drowsy Products would be purchased by Plaintiffs and the Classes.

54.     In connection with the sale of the Non-Drowsy Products, Defendant, as the designer, manufacturer, marketer, distributor, and/or seller issued written warranties by representing that the Non-Drowsy Products were "Non-Drowsy" and were "Daytime" products. These were affirmations of fact about the products (i.e., a description of the effects) and a promise relating to the goods.

55.     In fact, the Non-Drowsy Products do not conform to the above referenced representations because, as alleged in detail above, they cause drowsiness. Thus, the warranty was breached.

56.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and the Class members have been injured and harmed because they would not have purchased the products had they known that the Non-Drowsy Products cause drowsiness; or (2) they overpaid for the Non-Drowsy Products because they are sold at a premium due to the warranties.

57.     On April 13, 2022, prior to filing this action, Defendant was served with a pre-suit notice letter pursuant to U.C.C. § 2-607.

## COUNT II

**VIOLATION OF THE WISCONSIN FRAUDULENT REPRESENTATIONS LAW**
*Wis. Stat. Ann. § 100.18, et seq.*
**(on behalf of Plaintiff Fitzl and the Wisconsin Subclass)**

57.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

58.     Plaintiff Fitzl bring this cause of action on behalf of herself and members of the Wisconsin Subclass.

59.     The WDTPA, (Wis. Stat. Ann. § 100.18, *et seq.*) makes it unlawful for a defendant, with intent to induce an obligation, to make a representation to the public, where the representation

1   was untrue, deceptive, or misleading, and where the representation caused a pecuniary loss.  *See*

2   *Chris Hinrichs & Autovation Ltd. v. Dow Chem. Co.*, 2020 WI 2, at \*P85 (2020); *K&S Tool & Die*

3   *Corp. v. Perfection Mach. Sales, Inc.*, 2007 WI 70, at \*P19 (2007).

4        60.    Defendant made representations to the public by offering its Non-Drowsy Products

5   through its various retail streams, including claims, through picture or otherwise, that the products

6   were "Non-Drowsy" and meant for "Daytime" use.

7        61.    Defendant's representations about the "Non-Drowsy" and "Daytime" characteristics

8   of its products were untrue, deceptive, or misleading as the products contained an ingredient which

9   is known to cause drowsiness.

10        62.    Defendant's representations were likely to deceive, and did deceive, Plaintiff Fitzl

11   and reasonable consumers.

12        63.    Defendant knew or should have known, through the exercise of reasonable care that

13   the statements were untrue, deceptive, and misleading.

14        64.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff Fitzl

15   saw, read, and reasonably relied on them when purchasing Non-Drowsy Products. Defendant's

16   misrepresentations were a substantial factor in Plaintiff Fitzl's purchase decisions.

17        65.    In addition, reliance can be inferred because Defendant's misrepresentations were

18   material, *i.e.*, a reasonable consumer would consider them important in deciding whether to buy the

19   Non-Drowsy Products.

20        66.    Defendant's misrepresentations were a substantial factor and proximate cause in

21   causing damages and losses to Plaintiff Fitzl.

22        67.    As a direct and proximate result of these acts, consumers have been and are being

23   harmed. Plaintiff Fitzl and members of the Wisconsin Subclass have suffered injury and actual out-

24   of pocket losses because: (a) Plaintiff Fitzl and members of the Wisconsin Subclass would not have

25   purchased the Non-Drowsy Product if they had known the true facts regarding the products; (b)

26   Plaintiff Fitzl and members of the Wisconsin Subclass paid a price premium due to the

27   misrepresentations about the product; and (c) the Non-Drowsy did not have the promised quality,

28   effectiveness, or value.

68.     As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Fitzl and Wisconsin Subclass members have been damaged as alleged herein, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

69.     In addition, Plaintiff Fitzl and Wisconsin Subclass members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

## COUNT III

**VIOLATION OF THE OHIO DECEPTIVE TRADE PRACTICES ACT (OHIO REV. CODE § 4165.01, *ET SEQ*.)**
**(on behalf of Plaintiff Horton and the Ohio Subclass)**

70.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

71.     Plaintiff Horton bring this cause of action on behalf of herself and members of the Ohio Subclass.

72.     Defendant, Plaintiff, and absent Ohio Subclass members are each a "person," as defined by Ohio Rev. Code § 4165.01(D).

73.     Defendant advertised, offered, or sold goods or services in Ohio and engaged in trade or commerce directly or indirectly affecting the people of Ohio.

74.     Defendant engaged in deceptive trade practices in the course of its business and vocation, in violation of Ohio Rev. Code § 4165.02, including: representing that its goods and services have characteristics, uses, benefits, or qualities that they do not have, in violation of Ohio Rev. Code § 4165.02(A)(7); representing that its goods and services are of a particular standard or quality when they are of another, in violation of Ohio Rev. Code § 4165.02(A)(9); and advertising its goods and services with intent not to sell them as advertise, in violation of Ohio Rev. Code § 4165.02(A)(11).

75.     By representing on its product packaging that its Non-Drowsy Products are "Non-Drowsy" and for "Daytime" use, whereas in reality the Non-Drowsy Products contain an ingredient

1   known to cause drowsiness, Defendant knowingly and intentionally made material
2   misrepresentations of material facts, in violation of the Ohio Deceptive Trade Practices Act.

3   76.   Defendant's representations were material because they were likely to deceive
4   reasonable consumers.

5   77.   Defendant intended to mislead Plaintiff Horton and Ohio Subclass members and
6   induce them to rely on its misrepresentations and omissions.

7   78.   Defendant acted intentionally, knowingly, and maliciously to violate Ohio's
8   Deceptive Trade Practices Act, and recklessly disregarded Plaintiff Horton's and Ohio Subclass
9   members' rights.

10   79.   As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff
11   Horton and absent Ohio Subclass members have suffered and will continue to suffer injury,
12   ascertainable losses of money or property, and monetary and non-monetary damages.

13   80.   Plaintiff Horton and members of the Ohio Subclass are entitled to damages or other
14   appropriate legal or equitable relief, pursuant to the OH DTPA, as set forth above.

15   ## COUNT IV

16   ### UNJUST ENRICHMENT
### (on behalf of the Plaintiffs and the Nationwide Class)
17

18   81.   Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them
    as if fully set forth herein.
19

20   82.   Plaintiffs and Class members conferred benefits upon Defendant. Plaintiffs and Class
21   members paid money for Defendant's Non-Drowsy Products that they would not have paid, had
    they known that the products cause drowsiness.
22

23   83.   Defendant has unjustly retained the benefits conferred upon by Plaintiffs and Class
    members.
24

25   84.   Defendant retained those benefits under circumstances that make it inequitable for
26   Defendant to retain such benefits. Specifically, Defendant retained those benefits even though
27   Defendant's Non-Drowsy Products cause drowsiness. If Plaintiffs and Class members had known
    the true nature of Defendant's Non-Drowsy Products, they would not have purchased the products.
28

1    Plaintiffs and Class members are therefore entitled to disgorgement and/or restitution as prayed for

2    hereunder.

3        85.    Because Defendant's retention of the non-gratuitous benefits conferred on it by

4    Plaintiffs and members of the Class is unjust and inequitable, Defendant must pay restitution to

5    Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

6                                             **COUNT V**

7                               **NEGLIGENT MISREPRESENTATION**
      **(on behalf of the Plaintiffs and the Nationwide Class or, alternatively, the Wisconsin and Ohio**
8                                          **Subclasses)**

9
10       86.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them

11   as if fully set forth herein.

12       87.    Plaintiffs bring this claim against Defendant on behalf of themselves and the

13   proposed Class.

14       88.    Defendant has made material misrepresentations of fact concerning the nature of,

15   and ingredients in, the Non-Drowsy Products to Plaintiffs and the Class.

16
17       89.    Defendant has and had no reasonable basis for believing that their misrepresentations

18   were true.

19       90.    Defendant knew, or should have known, that Plaintiffs and the members of the Class

20   would rely on the false representations about the nature of, and ingredients in, the Non-Drowsy

21   Products.

22       91.    Defendant's false representations about the ingredients of the Non-Drowsy Products

23   are objectively material to reasonable consumers, and therefore reliance upon such representations

24   may be presumed as a matter of law.

25
26       92.    Plaintiffs and members of the Class have read and reasonably relied to their

27   detriment on Defendant's false and misleading representations, which caused them to purchase the

28   Non-Drowsy Products.

93.    As a proximate result of Defendant's negligent misrepresentations, Plaintiffs and each member of the Class has been damaged in the amount of the purchase price of the Non-Drowsy Products and any consequential damages resulting from their purchases, including sales tax.

## COUNT VI

### INTENTIONAL MISREPRESENTATION
**(on behalf of the Plaintiffs and the Nationwide Class or, alternatively, the Wisconsin and Ohio Subclasses)**

94.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

95.    Defendant has intentionally made material misrepresentations of fact concerning the nature of, and ingredients in, the Non-Drowsy Products to Plaintiffs and the Class.

96.    Defendant knew that the intentional misrepresentations herein were false at the time they were made.

97.    Defendant intended that Plaintiffs and members of the Class would rely on the false representations and purchase Defendant's Non-Drowsy Products.

98.    Defendant's false representations are objectively material to reasonable consumers and therefore reliance upon such representations may be presumed as a matter of law.

99.    Plaintiffs and members of the Class reasonably relied to their detriment on Defendant's intentional misrepresentations.

100.    Defendant's intentional misrepresentations were a substantial factor in causing Plaintiffs and members of the Class to purchase the Non-Drowsy Products.

101.    Defendant has acted with malice by engaging in conduct that was and is intended to cause injury to Plaintiffs and the members of the Class.

102.    Defendant has committed fraud through their intentional misrepresentations, deceit, and/or concealment of material facts known to Defendant with the intent to cause injury to the

purchasers of the Non-Drowsy Products.

103.   As a proximate result of Defendant's intentional misrepresentations, Plaintiffs and the members of the Class suffered an ascertainable loss and are entitled to relief and compensatory and punitive damages, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendant as follows:

a.      Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Class, and designating Plaintiffs' counsel as Class Counsel;

b.      Awarding Plaintiffs and the Classes compensatory damages, in an amount exceeding $5,000,000, to be determined by proof;

c.      Awarding Plaintiffs and the Classes appropriate relief, including but not limited to actual damages;

d.      For declaratory and equitable relief, including restitution and disgorgement;

e.      For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

f.      Awarding Plaintiffs and the Classes the costs of prosecuting this action, including expert witness fees;

g.      Awarding Plaintiffs and the Classes reasonable attorneys' fees and costs as allowable by law;

h.      Awarding pre-judgment and post-judgment interest;

i.      For punitive damages; and

j.      Granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury of all claims so triable.

Dated: April 22, 2022                    Respectfully submitted,

**PHILLIPS LAW FIRM**

*Ralph Glenn Phillips*

Ralph Glenn Phillips, WSBA # 14220
Douglas Weinmaster, WSBA #28225
17410 133rd Avenue NE, Suite 301
Woodinville, WA 98072
Telephone: (425) 482-1111
Facsimile: (425) 482-6653
Email:Glenn@Justiceforyou.com
Email: Dweinmaster@justiceforyou.com

Nick Suciu III (*pro hac vice* to be filed)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: 313-303-3472
Email: nsuciu@milberg.com

Gary M. Klinger (*pro hac vice* to be filed)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: 866.252.0878
Email: gklinger@milberg.com

**LEVI & KORSINSKY, LLP**
Mark S. Reich (*pro hac vice* to be filed)
Courtney E. Maccarone (*pro hac vice* to be filed)
55 Broadway, 10th Floor
New York, NY 10006
Telephone: 212-363-7500
Facsimile: 212-363-7171
Email: mreich@zlk.com
Email: cmaccarone@zlk

*Counsel for Plaintiffs*